## UNITED STATES DISTRICT COURT
## DISTRICT OF IDAHO

| | |
|---|---|
| SARA LEN A., | Case No.: 4:20-cv-00459-REP |
| Petitioner, | **MEMORANDUM DECISION AND ORDER** |
| vs. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Respondent. | |

Pending is Petitioner Sara Len A.'s Petition for Review (Dkt. 1) and an accompanying Motion for Summary Judgment (Dkt. 32) appealing the Social Security Administration's final decision finding her not disabled and denying her claim for disability benefits. *See* Pet. for Review (Dkt. 1). This action is brought pursuant to 42 U.S.C. § 405(g). Having carefully considered the record and otherwise being fully advised, the Court enters the following Memorandum Decision and Order.

## I. ADMINISTRATIVE PROCEEDINGS

On February 18, 2018, Petitioner protectively filed a Title II application for a period of disability and disability insurance benefits, alleging disability beginning July 22, 2017. The claim was originally denied on April 2, 2018, and again on reconsideration on August 17, 2018. On August 29, 2018, Petitioner filed a Request for Hearing before an Administrative Law Judge ("ALJ"). On March 9, 2020, ALJ David Willis held a hearing in Pocatello, Idaho, at which time Petitioner, represented by then-attorney Todd Pingel, appeared and testified. Anne T. Arrington, an impartial vocational expert, also appeared and testified at the same hearing.

On April 29, 2020, the ALJ issued a decision denying Petitioner's claim, finding that she was not disabled within the meaning of the Social Security Act. Petitioner timely requested

**MEMORANDUM DECISION AND ORDER - 1**

review from the Appeals Council.  On September 1, 2020, the Appeals Council denied

Petitioner's Request for Review, making the ALJ's decision the final decision of the

Commissioner of Social Security.

Petitioner is now represented by Josephine Gerrard and Brad Parkinson and, having

exhausted her administrative remedies, brings this case.  She raises three points of error: (i)

proper judicial review is impossible because the transcript of the March 9, 2020 hearing is

incomplete; (ii) the ALJ failed to address her mental impairments and limitations in several

respects; and (iii) at step five of the sequential process, the ALJ failed to identify jobs consistent

with her medical records.  Pet.'s Brief at 12-21 (Dkt. 32).[1]  Petitioner requests that the Court

either reverse the ALJ's decision and find that she is entitled to benefits, or remand the case for

further proceedings and award attorneys' fees.  *Id*. at 21-22.

## II.  <u>STANDARD OF REVIEW</u>

To be upheld, the Commissioner's decision must be supported by substantial evidence

and based on proper legal standards.  42 U.S.C. § 405(g);  *Trevizo v. Berryhill*, 871 F.3d 664 (9th

Cir. 2017).  Findings as to any question of fact, if supported by substantial evidence, are

conclusive.  *See* 42 U.S.C. § 405(g).  If there is substantial evidence to support the ALJ's factual

decisions, they must be upheld, even when there is conflicting evidence.  *See Treichler v.

Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014).

"Substantial evidence" is "such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Ludwig v.*

---

[1]  Petitioner rhetorically posits another possible point of error in her briefing: "Did the ALJ address [her] pain and migraines in the residual functional capacity finding?"  Pet.'s Brief at 12 (Dkt. 32) (listed as one of the several "issues").  However, this argument was never actually developed in the balance of Petitioner's opening brief or her reply brief.  Likewise, Respondent never confronted such an argument.  The Court, therefore, does not consider this argument as part of this action.

**MEMORANDUM DECISION AND ORDER - 2**

*Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012).  The standard requires more than a scintilla but less than a preponderance.  *Trevizo*, 871 F.3d at 674.  It "does not mean a large or considerable amount of evidence."  *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

With respect to questions of fact, the Court is to review the record as a whole to decide whether it contains evidence that would allow a reasonable mind to accept the conclusions of the ALJ.  *Richardson*, 402 U.S. at 401; *see also Ludwig*, 681 F.3d at 1051.  The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities.  *Treichler*, 775 F.3d at 1098.  Where the evidence is susceptible to more than one rational interpretation, the reviewing court must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record.  *Ludwig*, 681 F.3d at 1051.  In such cases, the reviewing court may not substitute its judgment or interpretation of the record for that of the ALJ.  *Batson v. Comm'r of Soc. Sec.*, 359 F.3d 1190, 1196 (9th Cir. 2004).

The decision must be based on proper legal standards and will be reversed for legal error.  *Zavalin v. Colvin*, 778 F.3d 842, 845 (9th Cir. 2015).  Considerable weight is given to the ALJ's construction of the Social Security Act.  *See Vernoff v. Astrue*, 568 F.3d 1102, 1105 (9th Cir. 2009).  However, this Court "will not rubber-stamp an administrative decision that is inconsistent with the statutory mandate or that frustrates the congressional purpose underlying the statute."  *Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir. 1987).

### III.   DISCUSSION

A.      **Sequential Process**

In evaluating the evidence presented at an administrative hearing, the ALJ must follow a sequential process in determining whether a person is disabled in general (20 C.F.R. §§ 404.1520, 416.920) – or continues to be disabled (20 C.F.R. §§ 404.1594, 416.994) – within the meaning of the Social Security Act.

**MEMORANDUM DECISION AND ORDER - 3**

The first step requires the ALJ to determine whether the claimant is engaged in substantial gainful activity ("SGA").  20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  SGA is work activity that is both substantial and gainful.  20 C.F.R. §§ 404.1572, 416.972.  "Substantial work activity" is work activity that involves doing significant physical or mental activities.  20 C.F.R. §§ 404.1572(a), 416.972(a).  "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized.  20 C.F.R. §§ 404.1572(b), 416.972(b).  If the claimant has engaged in SGA, disability benefits are denied regardless of her medical condition, age, education, and work experience.  20 C.F.R. §§ 404.1520(b), 416.920(b).  If the claimant has not engaged in SGA, the analysis proceeds to the second step.  Here, the ALJ found that Petitioner has not engaged in SGA since July 22, 2017 (the alleged onset date).  AR 16.

The second step requires the ALJ to determine whether the claimant has a medically determinable impairment, or combination of impairments, that is severe and meets the duration requirement.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  An impairment or combination of impairments is "severe" within the meaning of the Social Security Act if it significantly limits an individual's physical or mental ability to perform basic work activities.  20 C.F.R. §§ 404.1520(c), 416.920(c).  An impairment or combination of impairments is "not severe" if it does not significantly limit the claimant's physical or mental ability to do basic work activities.  20 C.F.R. §§ 404.1522, 416.922.  If the claimant does not have a severe medically determinable impairment or combination of impairments, disability benefits are denied.  20 C.F.R. §§ 404.1520(c), 416.920(c).  Here, the ALJ found that Petitioner has the following severe medically determinable impairments: "mild degenerative disc disease; obesity; sleep apnea; anxiety; and depression."  AR 16.

The third step requires the ALJ to determine the medical severity of any impairments; that is, whether the claimant's impairments meet or equal a listed impairment under 20 C.F.R.

**MEMORANDUM DECISION AND ORDER - 4**

Part 404, Subpart P, Appendix 1.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the

answer is yes, the claimant is considered disabled under the Social Security Act and benefits are

awarded.  20 C.F.R. §§ 404.1520(d), 416.920(d).  If the claimant's impairments neither meet nor

equal one of the listed impairments, the claimant's case cannot be resolved at step three and the

evaluation proceeds to step four.  20 C.F.R. §§ 404.1520(e), 416.920(e).  Here, the ALJ

concluded that Petitioner's above-listed medically determinable impairments, while severe, do

not meet or medically equal, either singly or in combination, the criteria established for any of

the qualifying impairments.  AR 17.

The fourth step of the evaluation process requires the ALJ to determine whether the

claimant's residual functional capacity ("RFC") is sufficient for the claimant to perform past

relevant work.  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  An individual's RFC is her

ability to do physical and mental work activities on a sustained basis despite limitations from her

impairments.  20 C.F.R. §§ 404.1545, 416.945.  An individual's past relevant work is work she

performed within the last 15 years, or 15 years prior to the date that disability must be

established, if the work lasted long enough for the claimant to learn to do the job and be engaged

in SGA.  20 C.F.R. §§ 404.1560(b), 404.1565, 416.960(b), 416.965.  Here, the ALJ concluded:

> After careful consideration of the entire record, the undersigned finds that the
> claimant has the residual functional capacity to perform light work as defined in 20
> CFR 404.1567(b) except lift, carry, push, and pull twenty pounds occasionally and
> no more than ten pounds frequently; sit six hours in an eight hour day; stand six
> hours in an eight hour day; and walk six hours in an eight hour day; occasionally
> climb ramps and stairs, balance, stoop, and kneel; never crouch or crawl, or climb
> ladders, ropes, or scaffolds; never work at unprotected heights, moving mechanical
> parts, or in extreme cold, or vibration; limited to performing simple, routine and
> repetitive tasks but not at a production rate; limited to simple work related decisions
> utilizing judgment or dealing with changes in the work setting; could have
> incidental contact with coworkers, but would be a job that would be performed by
> herself, so no greater than occasional contact with coworkers; no contact with
> members of the public.

AR 19.

**MEMORANDUM DECISION AND ORDER - 5**

In the fifth and final step, if it has been established that a claimant can no longer perform past relevant work because of her impairments, the burden shifts to the Commissioner to show that the claimant retains the ability to do alternate work and to demonstrate that such alternate work exists in significant numbers in the national economy.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1520(f), 416.920(f); *see also Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014).  If the claimant can do such other work, she is not disabled; if the claimant cannot do other work and meets the duration requirement, she is disabled.  Here, the ALJ found that Petitioner has no relevant past work, but is capable of working full-time in the following occupations: marking clerk, wrapping clerk, packing and collating, stock checking, stuffing work, document prep clerk, and final assembly.  AR 24-25.  Based on these findings, the ALJ concluded that Petitioner was not disabled.  AR 25-26.

**B.    Analysis**

1.    <u>The March 9, 2020 Hearing Transcript is Adequate for Judicial Review</u>

Petitioner argues that the March 9, 2020 hearing transcript is not reviewable because there are 14 instances where the word "INAUDIBLE" appears.  Pet.'s Brief at 12-13 (Dkt. 32).  She contends that, owing to these instances, an accurate review is impossible.  *Id*. at 13.  The Court disagrees.

If an incomplete record does not preclude effective judicial review, a case may proceed.  *Varney v. Sec. Health & Human Servs.*, 846 F.2d 581, 583 (9th Cir. 1988) (declining to remand on ground that portions of administrative hearing transcript deemed inaudible because gaps in testimony did not prevent sufficient understanding to point of precluding fair review).  Here, the Court has reviewed the transcript and finds that it captures the substance of the hearing, notwithstanding the sections that were not transcribed as inaudible.  The Court notes that many of these instances reflect the typical cross-talk heard in any recording and that, even with these

**MEMORANDUM DECISION AND ORDER - 6**

occurrences, the transcript can be plainly understood. *Id.* ("The 'inaudible' passages in the later parts of the transcript appear very small. Although distracting, the gaps do not interfere with comprehension of the testimony to an extent that would hinder fair review.") (internal quotation marks omitted). To be sure, aside from pointing out the fact of these 14 instances, Petitioner does not show how any substantive ambiguity resulted therefrom. There simply is none.

Reversal is not warranted on this issue.

2.    The ALJ Properly Considered Petitioner's Mental Impairments and Limitations[2]

Petitioner generally alleges that the ALJ "did not address [her] mental limitations." Pet.'s Brief at 13 (Dkt. 32). Her actual arguments informing this claim, however, are not immediately clear. For example, as support for her argument that the ALJ did not adequately synthesize her mental impairments with her RFC, she matter-of-factly argues that the ALJ "fail[ed] to address" her severe depression, anxiety, and PTSD. *Id.* at 15-19. Except at step two of the sequential process, the ALJ specifically found that Petitioner's depression and anxiety were severe medically determinable impairments that significantly limited her ability to perform basic work activities. *Supra* (citing AR 16-17). The Court therefore understands Petitioner's arguments in these nuanced respects to be: (i) the ALJ failed to provide clear and convincing reasons for rejecting her subjective symptom testimony;[3] (ii) the ALJ failed to find Petitioner's PTSD to be a

---

[2]  Petitioner also alleges disability due to physical impairments, including back pain. AR 37-47. She waives any challenge to the ALJ's consideration of these physical impairments by failing to raise this challenge in her briefing. *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (refusing to address ALJ's finding where Petitioner "failed to argue [the] issue with any specificity in his briefing.").

[3]  Though Petitioner raises a challenge to the ALJ's credibility assessment in the context of her anxiety, elsewhere she implies a more encompassing argument. *Compare* Pet.'s Brief at 17, n. 2 (Dkt. 32) (raising credibility challenge within anxiety-specific argument)*, with id.* at 19 (more general credibility challenge). The Court addresses the more overarching argument.

medically determinable impairment; and (iii) the ALJ failed  to include her mental limitations in her RFC.  None of these arguments are persuasive.

    a. *The ALJ Properly Questioned Petitioner's Subjective Symptom Testimony*

   According to Petitioner's testimony and written statements, she cannot work because of her anxiety and depression.  AR 37, 48.  Petitioner reports that, due to these conditions, she simply lacks the motivation "to do anything," including working and socializing.  AR 48-49. She claims to have panic attacks every day.  *Id*.  She also alleges trouble with her memory and ability to concentrate, complete tasks, understand, follow instructions, and get along with others. AR 247.

   As the trier-of-fact, the ALJ is in the best position to make credibility determinations and, for this reason, his determinations are entitled to great weight.  *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998).  In evaluating a claimant's subjective symptom testimony, the ALJ engages in a two-step analysis.  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007).  "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'"  *Id*. at 1036 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)).  Second, if such objective medical evidence exists, and the ALJ has not determined that the claimant is malingering, the ALJ must provide clear and convincing reasons before rejecting the claimant's testimony regarding the severity of the claimant's symptoms.  *Id*.

   Generalized findings will not satisfy this standard.  The reasons an ALJ provides for rejecting a claimant's symptom testimony "must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain."  *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) (quoting *Bunnell*, 947 F.2d at 345-46).  This requires that the ALJ

**MEMORANDUM DECISION AND ORDER - 8**

"identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id*. at 493 (quoting *Reddick*, 157 F.3d at 722).  If there is substantial evidence, courts will not engage in second-guessing.  *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002).  Even when the evidence can support either outcome, a court may not substitute its judgment for that of the ALJ.  *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

The ALJ's decision satisfies these standards.  Before rejecting Petitioner's symptom testimony, the ALJ provided valid, individualized reasons for finding Petitioner's claims about her mental health unconvincing.  To be sure, the ALJ found Petitioner's claims of debilitating depression and anxiety to be "not supported by the record."  AR 22.  The ALJ's justification in this regard amounts to clear and convincing reasons for questioning Petitioner's symptom testimony.

First, the ALJ concluded that Petitioner's claims do not align with the medical record.  *Id*. ("In fact, objective findings through examinations since the alleged onset date reveal no [mental health-related] abnormalities.").  Whereas Petitioner reports that her mental impairments are altogether debilitating, her medical records do not substantiate a situation involving near total inactivity due to disabling limitations.  For example, the ALJ noted that Petitioner consistently presented as (i) awake, alert, and oriented; (ii) pleasant and cooperative; (iii) well-groomed and dressed; (iv) in appropriate mood and affect; (v) interacting appropriately; and (vi) having coherent, logical, and goal-directed thought processes without flight of ideas and with good insight and judgment.  *Id*. (citing AR 402, 410, 418, 425-26, 434, 438-39, 445, 451, 457, 476-77, 531, 535, 538, 543, 546, 553, 556, 560, 599, 604, 612, 617, 622, 627, 632, 637, 648, 654, 660, 681, 688, 690, 711, 716, 719-20, 722, 736, 739-40, 749-50, 787-88, 802, 837, 851, 878).  At times, Petitioner even *denied* depressive symptoms altogether.  AR 22 (citing AR 537, 552, 555, 559, 563, 567, 569, 571, 579, 583, 621, 647, 653, 656, 659, 665, 687).  "Contradiction with the

medical record is a sufficient basis for rejecting the claimant's subjective testimony."

*Carmickle*, 533 F.3d at 1161; *see also Garcia v. Comm'r of Soc. Sec.*, 2022 WL 3908307, at *10

(E.D. Cal. 2022) (highlighting evidentiary difference between *lack* of corroborating medical

evidence and outright *conflict* with medical evidence in credibility assessment setting, stating:

"inconsistency or conflict with the medical record, if it can be considered a different and

standalone sufficient finding from a lack of objective medical evidence, [is] more rooted in the

ability of the Court to utilize ordinary techniques of credibility evaluation.") (internal quotation

marks omitted).[4]

Second, the ALJ reviewed Petitioner's treatment record and found that medication

significantly relieved her anxiety and depression, with only occasional lingering symptoms.  AR

22 (citing AR 723, 736) (Petitioner reporting to primary care physician in Fall 2019 that "her

symptoms are well-controlled at this time").  Indeed, the ALJ emphasized that Petitioner never

sought treatment from a mental health provider since the alleged onset date.  *Id*.  These are clear

and convincing reasons for discounting Petitioner's subjective claim that her anxiety and

depression cause her to be disabled.  *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) ("We

have previously indicated that evidence of conservative treatment is sufficient to discount a

claimant's testimony regarding severity of an impairment."); *Orn v. Astrue*, 495 F.3d 625, 638

(9th Cir. 2007) ("unexplained, or inadequately explained, failure to seek treatment" may be basis

for adverse credibility finding).

---

[4]  That the ALJ still concluded that Petitioner suffers from depression and anxiety (and that those impairments are severe) is immaterial.  The point here is that the ALJ did not believe Petitioner cannot work *because* of these impairments.  *See* AR 22 (ALJ stating: "While the undersigned does not dispute that the claimant's conditions would pose limitations in her ability to perform some work related activities, the evidence, overall, does not support limitations beyond those set forth in the residual functional capacity.").  The ALJ relied upon both the lack of medical evidence and outright inconsistent medical evidence to reach this conclusion.  Based on these findings, the ALJ reasonably concluded that Petitioner's testimony was unreliable.

**MEMORANDUM DECISION AND ORDER - 10**

Third, the ALJ concluded that Petitioner's daily activities "are not as indicative of a

person who is totally incapable of working." AR 22. The ALJ observed that, despite

Petitioner's claimed inability to work (owing to both her physical and mental limitations), she

still (i) regularly walks and does Zumba for exercise, admitting that she lost 65 pounds doing so;

(ii) lives alone yet is able to manage her own household; (iii) goes shopping for an hour at a

time; (iv) walks to the library; (v) regularly drives; (vi) runs errands, cooks, and does household

chores; (vii) reads, colors, watches television, and rents movies and watches them; (ix) uses the

internet (Facebook); (x) has several friends; (xi) regularly visits her family; (xii) does heavy

lifting; (xiii) has worked as a housekeeper in a nursing home during the period at issue; and (xiv)

reports being very busy (to explain her inconsistent attendance at physical therapy). *Id*. (citing

AR 39, 56-58, 244-46, 337-38, 410, 475, 531, 560, 563, 570-71, 643, 648, 651, 654, 657, 665,

676, 682, 691, 836, 842, 851). These daily activities support the ALJ's reading of the treatment

record and the ALJ's adverse credibility determination.[5] Where a claimant's reported activities

conflict with her description of the severity of her pain-related limitations, that is a clear and

convincing reason for discounting assertions of disability. *Bray v. Comm'r of Soc. Sec.*, 554

---

[5] Petitioner appropriately tries to add context to these activities to show that, in fact, she has anxiety. Pet.'s Brief at 17 (Dkt. 32). But this is not a case where the ALJ refused to accept that Petitioner suffers from certain impairments, or that such impairments impact her ability to work. To the contrary, the ALJ recognized Petitioner's anxiety and depression and incorporated their limiting effects into her RFC. *Supra*. In assessing Petitioner's credibility, then, the ALJ was not focused on whether Petitioner suffered from anxiety or depression, but on how severe these conditions are and whether they prevent her from engaging in any full-time work. *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012) ("Even where . . . activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of *totally debilitating* impairment.") (emphasis added). It is the reasonableness of *these* findings that the Court must review on appeal. Moreover, Petitioner's insistence that the cited daily activities are not inconsistent with her testimony or with a claim of disability is simply an alternative reading of the record. Where, as here, the ALJ's interpretation of a claimant's activities is rational, that decision must be upheld even if the evidence of the claimant's reported activities "may also admit of an interpretation more favorable" to the claimant. *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).

**MEMORANDUM DECISION AND ORDER - 11**

F.3d 1219, 1227 (9th Cir. 2009) ("In reaching a credibility determination, an ALJ may weigh

inconsistencies between the claimant's testimony and his or her conduct, daily activities, and

work record among other factors."); *Ghanim v. Colvin*, 763 F.3d 1154, 1165 (9th Cir. 2014)

("Engaging in daily activities that are incompatible with the severity of symptoms alleged can

support an adverse credibility determination.").

Together, these reasons amount to clear and convincing explanations as to why the ALJ

found Petitioner's testimony not entirely credible.  Critically, the Court's role is not to decide

whether Petitioner is disabled under the applicable statutes and regulations, or even whether she

suffers from chronic, disabling limitations.  Even though conflicting evidence may not have been

given the weight that Petitioner would have preferred, the ALJ's decision to question her

subjective symptom allegations is supported by clear and convincing reasons.  The Court uses –

as it must – *that* standard.  Accordingly, the ALJ will not be second-guessed given the

justifications provided.  *Batson*, 359 F.3d at 1193 ("[T]he Commissioner's findings are upheld if

supported by inferences reasonably drawn from the record, and if evidence exists to support

more than one rational interpretation, we must defer to the Commissioner's decision.").

Reversal is not warranted on this issue.

b.      *The ALJ Did Not Err in Addressing Petitioner's Alleged PTSD*

Citing to her own testimony at the March 9, 2020 hearing and an "assessment" of PTSD

from Andy Brower, PA, Petitioner argues that the ALJ failed to consider her PTSD.  Pet's Brief

at 16 (Dkt. 32) (citing AR 50, 732-33).  But Petitioner's testimony is not sufficient to establish a

medically determinable impairment.  20 C.F.R. § 404.1521 ("We will not use your statement of

symptoms, a diagnosis, or a medical opinion to establish the existence of an impairment(s).").

Instead, medically determinable impairments "must result from anatomical, physiological, or

psychological abnormalities that can be shown by medically acceptable clinical and laboratory

**MEMORANDUM DECISION AND ORDER - 12**

diagnostic techniques" which "must be established by objective medical evidence from an acceptable medical source." *Id*. Petitioner points to no such evidence here and, without more, an unadorned "assessment" does not meet this exacting standard. Petitioner's alleged PTSD is therefore not a medically determinable impairment.

Additionally, Petitioner identifies no limitations specific to her alleged PTSD that are not already captured by her understood anxiety and depression. In other words, even if the ALJ erred in failing to recognize Petitioner's alleged PTSD as a medically determinable impairment, any such error is harmless. *See Garcia v. Comm'r of Soc. Sec.*, 587 Fed. App'x 367, 370 (9th Cir. 2014) (any error in not identifying depression at step two of sequential process was harmless because "the ALJ proceeded through the entire sequential analysis, carefully considering all of [the] mental health records in assessing her [RFC].").

Reversal is not warranted on this issue.

        c.     *The ALJ Did Not Err When Assigning Petitioner's RFC*

Petitioner argues that the ALJ did not adequately address the connection between her mental impairments and her RFC. Pet.'s Brief at 13-19 (Dkt. 32); Pet.'s Reply at 6-9 (Dkt. 34). More specifically, she claims that, rather than incorporating the mental limitations identified by John Christensen, PhD., the ALJ improperly made his own evaluation of her abilities. Pet.'s Reply at 7 (Dkt. 34). This argument is without merit.

The RFC is the most a person can do, despite their physical or mental impairments. 20 C.F.R. §§ 404.1545, 416.945. Determining a claimant's RFC is an administrative finding reserved to the Commissioner that is based on "all of the relevant medical and other evidence." 20 C.F.R. §§ 404.1527(d), 404.1545(a)(3), 404.1513(a)(2). This includes medical opinion evidence, medical records, lay evidence, and "the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment." *Id*.; SSR 96-8p. Regardless of

**MEMORANDUM DECISION AND ORDER - 13**

severity, the ALJ is required to consider all of a claimant's medically determinable impairments, including those that are not severe. *See* 20 C.F.R. § 404.15415(a)(2). The ALJ is "responsible for translating and incorporating medical findings into a succinct" RFC. *Rounds v. Comm'r of Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015).

On January 12, 2017, Dr. Christensen performed a mental status examination and clinical assessment interview of Petitioner. AR 336. He opined in relevant part:

> The claimant's psychological issues would likely have a moderate impact on her ability to complete daily activities. Specifically, I would anticipate that her anxiety and depressed mood would impact her ability to interact socially and adapt to workplace change. She does have marked difficulty with attention/concentration, possibly associated with the combination of her emotional complaints and cognitive processing issues. She would be able to understand simple instruction, but I anticipate that she would have marked difficulty with complex instruction. Again, the claimant does report co-occurring pain issues, and pain and its impact on daily function would need to be further assessed by a medical doctor. During the interview, she reported that she has difficulty completing physical tasks and has to pace herself when completing daily activities.

AR 341. Petitioner argues that the ALJ failed to present an "accurate and logical bridge" from this evidence to the RFC. Pet.'s Reply at 7 (Dkt. 34). She does not develop this argument but, regardless, this argument mischaracterizes the ALJ's decision.

Here, the ALJ discussed Dr. Christensen's opinions at sufficient length and, in doing so, referenced the same limitations that Dr. Christensen identified above. AR 22-23. The ALJ even gave "great consideration" to Dr. Christensen's findings even though his examination took place *before* Petitioner's onset date. AR 22-23 (ALJ stating: "While his assessment is remote from the alleged onset date, this is the only examination near the onset date that the claimant had with a provider specializing in mental health."); *see also Burkhart v. Bowen*, 856 F.2d 1335, 1340 n.1 (9th Cir. 1988) (concluding that ALJ correctly rejected medical evidence because it predated relevant time period). However, owing to the overall lack of treatment from mental health providers, no counseling or therapy records, no emergency room visits or inpatient

**MEMORANDUM DECISION AND ORDER - 14**

hospitalizations related to her mental health conditions, the absence of any significant findings upon examination, and Petitioner's daily activities, the ALJ concluded that the evidence does not support more than moderate mental health limitations.  AR 23; *see also* AR 22 (ALJ acknowledging Dr. Christensen's reference to Petitioner's "marked difficulty with attention and concentration" but that she would nonetheless "be able to understand simple instruction").

Ultimately, the ALJ accounted for Petitioner's mental limitations by finding that she has the RFC to perform light work, though (i) "limited to performing simple, routine and repetitive tasks but not a production rate"; (ii) "limited to simple work-related decisions utilizing judgment or dealing with changes in the work setting"; (iii) "could have incidental contact with coworkers, but would be a job that would be performed by herself, so no greater than occasional contact with coworkers"; and (iv) "no contact with members of the public."  AR 19.  This RFC expressly takes into account Dr. Christensen's opinions cross-referenced against the balance of the medical record.  Otherwise there would have been no basis to validate Petitioner's mental impairments at step two of the sequential process or to have Petitioner's mental limitations even reflected in her RFC.  AR 23 (ALJ finding the DDS opinion of no severe mental impairment not persuasive, "giv[ing] more creed to Dr. Christensen's opinion given he had the opportunity to evaluate and interact with the claimant in person.").

In sum, the ALJ found that Petitioner's mental limitations were not sufficiently severe to limit her ability to work at the light exertional level, and the ALJ appropriately determined that Petitioner could perform work in the national economy (*infra*).  The Court finds that the ALJ properly considered Petitioner's mental limitations in his RFC analysis.  AR 19-24.  Accordingly, the Court finds that the ALJ's assessment of Petitioner's mental limitations in the RFC is supported by substantial evidence and free of harmful error.

Reversal is not warranted on this issue.

**MEMORANDUM DECISION AND ORDER - 15**

3.    The ALJ Did Not Err at Step Five of the Sequential Process

Petitioner argues that the Dictionary of Occupational Titles ("DOT") descriptions for the jobs identified at step 5 of the sequential process require math skills beyond her capabilities. Pet.'s Brief at 19-21 (Dkt. 32). She states that, because Dr. Christensen opined that Petitioner "could not complete even simple division," the ALJ erred in relying on the jobs identified by the vocational expert because they all require Mathematical Development Level 01 ("Level 1").[6]  *Id.* at 20-21 (citing AR 340). This argument is unpersuasive.

First, as indicated above, Dr. Christensen's opinions precede the alleged onset date. *Supra* (citing *Burkhart*, 856 F.2d at 1340 n.1). And while the ALJ nevertheless considered Dr. Christensen's opinions in his decision, there are no other objective records speaking to Petitioner's capacity in mathematics or how those abilities translate to specific work-related limitations, if any. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (lack of objective medical evidence represents specific, legitimate reason to discount opinion).

Second, it may be true that, despite the Commissioner's own regulations,[7] Petitioner's counsel never asked her about her math abilities at the March 9, 2020 hearing and never raised it with the Appeals Council. The Ninth Circuit does not look favorably on an attempt to remand a case for factual development that a claimant's attorney could have performed earlier. *See, e.g.*, *Phillips v. Colvin*, 593 Fed. App'x 683, 684 (9th Cir. 2015) ("This issue was waived by

---

[6] Level 1 math proficiency indicates an ability to add and subtract two-digit numbers; multiply and divide 10s and 100s by 2, 3, 4, and 5; perform basic arithmetic using coins and dollars; and perform operations with various units of measurement.  DOT Appx. C, § III (01 Mathematical Development).  There is no level of math proficiency lower than Level 1.

[7] The Social Security Administration "will ask you how long you attended school, and whether you are able to understand, read, and write, *and do at least simple arithmetic calculations*.  We will also consider other information about how much formal or informal education you may have had . . . ."  20 C.F.R. § 404.1564(c) (emphasis added).

**MEMORANDUM DECISION AND ORDER - 16**

Phillips's failure to raise it at the administrative level when he was represented by counsel, and

Phillips has not demonstrated manifest injustice excusing the failure."); *Meanel v. Apfel*, 172

F.3d 1111, 1115 (9th Cir. 1999) ("[W]hen claimants are represented by counsel, they must raise

all issues and evidence at their administrative hearings in order to preserve them on appeal.").

Third, and most determinative here, the Mathematical Development levels are part of the

DOT General Educational Development (GED) scale that "embraces those aspect of education

(formal and informal) which are required of the worker for satisfactory job performance."  DOT

Appx. C, § III.  "This is education of a general nature which does not have a recognized, fairly

specific occupational objective."  *Id*.  Thus, the GED definition trailers describe the relevant

education levels "based on the curricula taught in schools throughout the United States;" they

may inform, but do not necessarily impose, job requirements.  *Id*.

The Ninth Circuit in *Gutierrez v. Colvin*, 844 F.3d 804 (9th Cir. 2016), explained this

interplay.  There, the court addressed the disconnect between the generalized DOT descriptions

of the educational levels suitable for certain types of occupations and the core requirements of a

particular job.  The ALJ ruled that a claimant had an RFC to work as a cashier and was therefore

not disabled.  The claimant appealed the ALJ's decision, arguing in part that the generalized

DOT descriptions indicated that some cashiers might be required to "frequently" engage in

overhead reaching – something the claimant could not do.  In affirming the ALJ's finding of no

disability, the court held:

> [I]t's important to keep in mind that the [DOT] refers to "occupations," not to
> specific jobs.  "Occupation" is a broad term that includes "the collective
> description" of "numerous jobs" and lists "maximum requirements" of the jobs as
> "generally performed."  SSR 00-4P, 2000 WL 1898704, at *2-3.  Because of this
> definitional overlap, not all potential conflicts between an expert's job suitability
> recommendation and the [DOT's] listing of "maximum requirements" for an
> occupation will be apparent or obvious.  And, to reiterate, an ALJ need only follow
> up on those that are.

**MEMORANDUM DECISION AND ORDER - 17**

. . .

> For a difference between an expert's testimony and the [DOT's] listings to be fairly characterized as a conflict, *it must be obvious and apparent.  This means that the testimony must be at odds with the [DOT's] listing of job requirements that are essential, integral, or expected.*  This is not to say that ALJs are free to disregard the [DOT's] definitions or take them with a grain of salt – they aren't.  *But tasks that aren't essential, integral, or expected parts of a job are less likely to qualify as apparent conflicts that the ALJ must ask about*.  Likewise, where the job itself is a familiar one – like cashiering – less scrutiny by the ALJ is required.

*Id*. at 807-09 (emphasis added).

With *Gutierrez* as a guide, the Court concludes that, at most, the ALJ committed harmless error by failing to clarify whether the jobs the vocational expert identified required math skills.  To be sure, as described in the DOT, the duties for each job do not involve math skills generally or division *in particular*.  For example:

- Marking Clerk: "Marks and attaches price tickets to articles of merchandise to record price and identifying information: Marks selling price by hand on boxes containing merchandise, or on price tickets.  Ties, glues, sews, or staples price ticket to each article.  Presses lever or plunger of mechanism that pins, pastes, ties, or staples ticket to article.  May record number and type of articles marked and pack them in boxes.  May compare printed price tickets with entries on purchase order to verify accuracy and notify supervisor of discrepancies.  May print information on tickets, using ticket-printing machine.  DOT 209.587-034.

- Wrapping Clerk: "Spreads silverware on absorbent cloth to remove moisture.  Wraps individual place settings in napkins or inserts them with prescribed accessory condiments in plastic bag and closes bag with electric sealer.  May immerse silverware in cleaning solution to remove soap stains before wrapping.  May place tarnished and bent eating utensils aside."  DOT 318.687-018.

- Packaging and Collating: "Examines gathered book, magazine, and pamphlet bodies to verify order and number of included signatures: Riffles bodies, one section at a time, observing signature figures.  Notes omitted, misplaced, or duplicated signatures, and rearranges or inserts sections to correct subject matter.  Stacks completed bodies."  DOT 653.687-010.

- Stock Checking: "Verifies quantities, quality, condition, value, and type of articles purchased, sold, or produced against records or reports.  May sort data or items into predetermined sequence or groups.  May record items verified."  DOT 222.687-010.

**MEMORANDUM DECISION AND ORDER - 18**

- <u>Stuffing Work</u>: "Tends machine that blows filler into stuffed-toy shells: Inserts precut supporting wire into shell.  Places shell opening over stuffing machine nozzle.  Depresses pedal to blow cotton or chopped foam rubber tiller into shell to impart shape to toy.  Places stuffed toy in tote box.  Records production." DOT 731.685-014.

- <u>Document Prep Clerk</u>: "Prepares documents, such as brochures, pamphlets, and catalogs, for microfilming, using paper cutter, photocopying machine, rubber stamps, and other work devices: Cuts documents into individual pages of standard microfilming size and format when allowed by margin space, using paper cutter or razor knife.  Reproduces document pages as necessary to improve clarity or to reduce one or more pages into single page of standard microfilming size, using photocopying machine.  Stamps standard symbols on pages or inserts instruction cards between pages of material to notify microfilm-camera operator . . . of special handling, such as manual repositioning, during microfilming.  Prepares cover sheet and document folder for material and index card for company files indicating information, such as firm name and address, product category, and index code, to identify material.  Inserts material to be filmed in document folder and files folder for processing according to index code and filming priority schedule."  DOT 249.587-018.

- <u>Final Assembly</u>: "Sets doll hair into specified style by combing, brushing, and cutting: Places doll head on holder and combs and brushes hair in prescribed manner to smooth and untangle hair, using wire brush and petroleum jelly.  Cuts hair to desired length, using scissors.  Sets hair into specified style and secures in place, using rubber bands.  Wipes doll face to remove smudges, using damp cloth.  Places plastic bag over finished head and tucks edges under base to prevent damage to hair and face."  DOT 731.687-014.

Again, none of the duties for these jobs obviously require math skills – specifically division. *Jeremy W. v. Saul*, 2021 WL 2292793, at *8 (D. Idaho 2021) ("None of the three occupations by the [vocational expert] strikes the Court as needing even very rudimentary math skills.  Someone employed as an electrode cleaner, garment worker, or food sorter might occasionally encounter math problems, but mathematical skills are not mentioned in the core requirements of the job descriptions.").  Nor has Petitioner made any argument that these jobs even require math skills.  *Id*.  As a result, there is no "obvious and apparent" conflict for the ALJ to reconcile.  The record therefore supports the ALJ's reliance on the vocational expert's testimony and the finding that Petitioner is able to perform other work.

**MEMORANDUM DECISION AND ORDER - 19**

Reversal is not warranted on this issue.

## IV.  <u>CONCLUSION</u>

The ALJ, as fact-finder, must weigh the evidence, draw inferences from facts, and determine credibility.  If the evidence is susceptible to more than one rational interpretation, one of which is the ALJ's, the Court may not substitute its interpretation for that of the ALJ.  *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985).  The ALJ has provided reasonable and rational support for his well-formed conclusions, even if such evidence is susceptible to a different interpretation.  Accordingly, the ALJ's decisions as to Petitioner's disability claim were based upon proper legal standards and supported by substantial evidence.  The Commissioner's decision is affirmed and Petitioner's Petition for Review is denied.

## V.  <u>ORDER</u>

Based on the foregoing, Petitioner's Petition for Review (Dkt. 1) and accompanying Motion for Summary Judgment (Dkt. 32) is DENIED and the decision of the Commissioner is AFFIRMED.

DATED:  September 29, 2022

Honorable Raymond E. Patricco
Chief U.S. Magistrate Judge